Filed 8/10/15

# IN THE SUPREME COURT OF CALIFORNIA

HARTFORD CASUALTY INSURANCE )
COMPANY, )
            )
    Cross-complainant )
    and Appellant, )
            )      S211645
    v. )
            )    Ct.App. 1/3 A133750
J.R. MARKETING, L.L.C., et al., )
            )    San Francisco County
    Cross-defendants )  Super. Ct. No. CGC-06-449220
    and Respondents. )
_____ )

This court has long maintained that if any claims in a third party complaint against a person or entity protected by a commercial general liability (CGL) insurance policy are even potentially covered by the policy, the insurer must provide its insured with a defense to all the claims. (E.g., *Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076, 1081.) The insurer's provision of an immediate, complete defense in such a "mixed" action, we have explained, is "prophylactically" necessary, even if outside of the policy's strict terms, to protect the insured's litigation rights with respect to the potentially covered claims. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 49 (*Buss*).) Nevertheless, we concluded in *Buss* that the insured would be unjustly enriched at the insurer's expense if not ultimately required to bear the cost of litigating those claims for

1

which the insured had never purchased defense or indemnity protection. Accordingly, we held in *Buss* that the insurer may seek reimbursement from the insured of defense fees and expenses solely attributable to the claims that were clearly outside policy coverage. (*Ibid.*)

We had no occasion in *Buss* to consider the related question presented here. From whom may a CGL insurer seek reimbursement when: (1) the insurer initially refused to defend its insured against a third-party lawsuit; (2) compelled by a court order, the insurer subsequently provided independent counsel under a reservation of rights — so-called *Cumis* counsel (see *San Diego Federal Credit Union v. Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358 (*Cumis*);[1] see also Civ. Code, § 2860[2]) — to defend its insured in the third party suit; (3) the court order required the insurer to pay all "reasonable and necessary defense costs," but expressly preserved the insurer's right to later challenge and recover payments for "unreasonable and unnecessary" charges by counsel; and (4) the insurer now alleges that independent counsel "padded" their bills by charging fees that were, in part, excessive, unreasonable, and unnecessary?

The insurer urges that it may recoup the overbilled amounts directly from *Cumis* counsel themselves. *Cumis* counsel respond that, if the insurer has any right at all under the facts of this case to recover overbilled amounts, the insurer's

_____

**1** The *Cumis* decision held that where the insurer provides a defense, but reserves the right to contest indemnity liability under circumstances suggesting that the insurer's interest may diverge from that of its insured, a conflict arises between insured and insurer. In such circumstances, a single counsel cannot represent both the insurer and the insured unless the insured gives informed consent. Absent the insured's consent to joint representation, the insurer must pay the insured's "reasonable cost" for hiring independent counsel to represent the insured's litigation interests under the insured's control. (*Cumis*, *supra*, 162 Cal.App.3d at p. 375.)

**2** Subsequent unlabeled statutory references are to the Civil Code.

right runs solely against its insureds. *Cumis* counsel's erstwhile clients might then have a right of indemnity from these counsel.

We conclude that under the circumstances of this case, the insurer may seek reimbursement directly from *Cumis* counsel. If *Cumis* counsel, operating under a court order that expressly provided that the insurer would be able to recover payments of excessive fees, sought and received from the insurer payment for time and costs that were fraudulent, or were otherwise manifestly and objectively useless and wasteful when incurred, *Cumis* counsel have been unjustly enriched at the insurer's expense. *Cumis* counsel provide no convincing reason why they should be absolutely immune from liability for enriching themselves in this fashion. Alternatively, *Cumis* counsel fail to persuade that any financial responsibility for their excessive billing should fall first on their own clients — insureds who paid to receive a defense of potentially covered claims, not to face additional rounds of litigation and possible monetary exposure for the acts of their lawyers. For these reasons, we reverse the judgment of the Court of Appeal insofar as it concluded that in this case, reimbursement cannot be obtained directly from *Cumis* counsel.

## I. BACKGROUND

In the summer of 2005, appellant Hartford Casualty Insurance Company (Hartford) issued one CGL insurance policy to Noble Locks Enterprises, Inc. (Noble Locks), effective from July 28, 2005, to July 28, 2006, and a second CGL policy to J.R. Marketing, L.L.C. (J.R. Marketing), effective August 18, 2005, to August 18, 2006. In these policies, Hartford promised to defend and indemnify the named insureds, and their members and employees, against certain claims for business-related defamation and disparagement.

In September 2005, an action was filed in Marin County Superior Court against J.R. Marketing, Noble Locks, and several of their employees (the Marin

3

County action). The complaint stated claims for intentional misrepresentation, breach of fiduciary duty, unfair competition, restraint of trade, defamation, interference with business relationships, mismanagement, and conspiracy. Around the same time, related actions were filed against many of the same parties in Nevada (the Nevada action) and Virginia (the Virginia action). In the Marin County action, certain defendants, apparently represented by the law firm of Squire Sanders (US) LLP (Squire Sanders),[3] filed cross-complaints.

On September 26, 2005, defense of the Marin County action was tendered to Hartford under the J.R. Marketing and Noble Locks policies. In early January 2006, Hartford disclaimed a duty to defend or indemnify the defendants in the Marin County action on the grounds that the acts complained of appeared to have occurred before the policies' inception dates, and that certain of the defendants appeared not to be covered insureds. The Marin County defendants, represented by Squire Sanders, thereupon filed the instant coverage action against Hartford (the coverage action). Hartford subsequently agreed to defend J.R. Marketing, Noble Locks, and several of the individual defendants in the Marin County action as of January 19, 2006, subject to a reservation of rights. However, Hartford declined to pay defense costs incurred before that date, and also declined to provide independent counsel in place of its panel counsel.

In July 2006, the trial court in the coverage action entered a summary adjudication order, finding that Hartford had a duty to defend the Marin County action effective on the date the defense was originally tendered. The order also provided that, because of Hartford's reservation of rights, Hartford must fund

---

**3** The name of this firm has recently been changed to Squire Patton Boggs (US) LLP. To avoid confusion, this opinion refers to the firm by its former name, which was in use throughout the bulk of the litigation.

*Cumis* counsel to represent its insureds in the Marin County action. The insureds retained Squire Sanders as *Cumis* counsel.

On September 26, 2006, the trial court in the coverage action issued an enforcement order directing Hartford to promptly pay all defense invoices submitted to it as of August 1, 2006, and to pay all future defense costs in the Marin County action within 30 days of receipt. The order, which was drafted by Squire Sanders and adopted by the court, further stated that Hartford had breached its defense obligations by refusing to provide *Cumis* counsel until ordered to do so and by thereafter failing to pay counsel's submitted bills in a timely fashion. The order also declared that although Squire Sanders's bills "still [had to] be reasonable and necessary," as a result of its breach, Hartford would be precluded from "invok[ing] the rate provisions of Section 2860."[4] Finally, the order provided that, "[t]o the extent Hartford seeks to challenge fees and costs as unreasonable or unnecessary, it may do so by way of reimbursement after resolution of the [Marin County action]." The Court of Appeal subsequently affirmed both the summary adjudication and enforcement orders.

In October 2009, the Marin County action was resolved. The coverage action, stayed during the pendency of the Marin County action, resumed. Hartford thereafter filed a cross-complaint, and then a first amended cross-complaint, against (1) various persons for whom it had allegedly paid defense fees and

---

**4**     In section 2860, the Legislature sought to codify and flesh out the independent counsel requirements of the *Cumis* decision. The statute provides, among other things, that the insurer's obligation to pay fees to *Cumis* counsel "is limited to the rates which are actually paid by the insurer to attorneys retained by it in the ordinary course of business in the defense of similar actions in the community where the claim arose or is being defended." (§ 2860, subd. (c).) The statute specifies that any dispute concerning attorney's fees "shall be resolved by final and binding arbitration by a single neutral arbitrator selected by the parties to the dispute." (*Ibid.*)

expenses in the Marin County, Nevada, and Virginia actions, and (2) Squire Sanders. The cross-complaint asserted that Hartford was entitled to recoup from the cross-defendants a significant portion of some $15 million in defense fees and expenses, including some $13.5 million Hartford paid to Squire Sanders pursuant to the enforcement order.

The first amended cross-complaint stated causes of action for reimbursement pursuant to the enforcement order, unjust enrichment, accounting/money had and received, and rescission. It asserted that Hartford was entitled to reimbursement for payment of defense legal services rendered beyond the scope of the enforcement order: (1) to individuals and entities who were not insureds under the J.R. Marketing and Noble Locks policies; (2) prior to any proper tender by any individual or entity; (3) for any individual or entity in the Nevada and Virginia actions; and (4) for any individual or entity to the extent the services, and the costs thereof, were "abusive, excessive, unreasonable or unnecessary."

Represented by Squire Sanders, the cross-defendants — including Squire Sanders itself — demurred to the first amended cross-complaint. The demurrer stated multiple grounds applicable to all the cross-defendants. Also included, however, was a separate contention that Hartford could assert no legal or equitable claim against "non-insureds, including an insured's independent counsel." In this regard, the demurrer asserted that an insurer's right to reimbursement depends on the contractual relationship between insured and insurer, and that "recognizing a reimbursement cause of action against a law firm would result in undesirable consequences."

On September 27, 2011, the trial court sustained, without leave to amend, the demurrer to the reimbursement and rescission causes of action as to the "non-insured" cross-defendants (identified as Scott Harrington, one of the Marin County

6

defendants, and Squire Sanders).[5]  In sustaining the demurrer as to Squire Sanders, the court concluded that Hartford's right to reimbursement, if any, was from its insureds, not directly from *Cumis* counsel.  The court indicated that it reached this conclusion based on *Buss* and *Jackson v. Rogers & Wells* (1989) 210 Cal.App.3d 336, a decision explaining the public policy against the assignment of legal malpractice actions.  The court subsequently entered a judgment dismissing Harrington and Squire Sanders from Hartford's cross-action.

Hartford appealed, contending that it was entitled to recover directly from *Cumis* counsel for "unreasonable" and "excessive" fees and costs.  In essence, Hartford asserted that counsel, not the insureds, had been unjustly enriched by overcharging Hartford for the insureds' defense.  The Court of Appeal affirmed the dismissal of both Harrington and Squire Sanders from Hartford's cross-action.

The bulk of the Court of Appeal's analysis focused on Hartford's direct claim against Squire Sanders.  The court stressed that restitution is not required merely because one person has benefited another.  Instead, the court reasoned, restitution is available only where it would be unjust to allow the person receiving the benefit to retain it, and where restitution would not frustrate public policy.  The court noted that Hartford initially breached its duty to defend the Marin County action, thus forcing its insureds to retain their own counsel and negotiate a fee arrangement.  Thereafter, Hartford, having reserved its right to contest coverage, was ordered to provide and compensate *Cumis* counsel.

Under these circumstances, the Court of Appeal concluded, allowing Hartford to sue Squire Sanders directly for reimbursement of defense fees and

---

**5**     The trial court also (1) sustained the demurrer to the unjust enrichment and accounting causes of action as to all the cross-defendants, and (2) overruled the demurrer to the reimbursement and rescission causes of action as to the remaining cross-defendants.

7

costs would frustrate the policies underlying section 2860 and the *Cumis* scheme generally. The case law already establishes, the Court of Appeal reasoned, that when *Cumis* counsel is provided following an insurer's breach of its duty to defend, "the insurer loses all right to control the defense." It cannot thereafter "impose[ ] on [them] its own choice of defense counsel, fee arrangement or strategy." Instead, counsel chosen by the insureds answer solely to their clients in regard to the clients' litigation interests, free from any insurer involvement in counsel's approach to the insureds' defense. Applying these principles, the court stated that it would "now take[ ] the law one slight step further by holding Hartford likewise barred from later maintaining a direct suit against independent counsel for reimbursement of fees and costs charged by such counsel for crafting and mounting the insureds' defense where Hartford considers those fees unreasonable or unnecessary."

The Court of Appeal reasoned as well that it would be anomalous if Hartford, having "waived" the right to arbitrate fee disputes under section 2860 by breaching its duty to defend, could now place itself in a better position by bringing its claims to court. Finally, the Court of Appeal observed that Squire Sanders had conferred a "benefit" not on Hartford, but on its clients. Accordingly, the court ruled, it is the insured cross-defendants, rather than Squire Sanders, to whom Hartford must look "if it believes the fees were incurred to defend claims that were not covered by the insurer's policies or that the insured[s] agreed to pay Squire [Sanders] more than was reasonable for the services that Squire [Sanders] performed."

We granted Hartford's petition for review, which raised a narrow question: May an insurer seek reimbursement directly from counsel when, in satisfaction of its duty to fund its insureds' defense in a third party action against them, the insurer paid bills submitted by the insureds' independent counsel for the fees and

8

costs of mounting this defense, and has done so in compliance with a court order expressly preserving the insurer's post-litigation right to recover "unreasonable and unnecessary" amounts billed by counsel?**6** We conclude that, given the facts of this case and within the limits discussed below, such a right of reimbursement should run directly against *Cumis* counsel.  We therefore reverse the Court of Appeal's judgment insofar as it addressed Hartford's rights against Squire Sanders, and otherwise affirm.**7**

---

**6** Hartford did not seek review of the dismissal of Harrington as a cross-defendant.

**7** In addressing this narrow "direct right" question, we note, but do not decide, three questions suggested by the procedural posture of this case.  As indicated above, the trial court's 2006 enforcement order, requiring Hartford to promptly pay *Cumis* counsel's bills, specified that Hartford "is [] not permitted to take advantage of Section 2860."  Nevertheless, the order stated that counsel's bills "still must be necessary and reasonable" and that, "[t]o the extent Hartford seeks to challenge fees and costs as unreasonable or unnecessary, *it may do so* by way of reimbursement after resolution of the [Marin County action]."  (Italics added.)  In light of the 2006 enforcement order's express provision authorizing Hartford to seek reimbursement for excessive fees, we need not and do not decide here whether, absent such an order, an insurer that breaches its defense obligations has *any* right to recover excessive fees it paid *Cumis* counsel.

Next, section 2860 specifies that disputes concerning the fees charged by *Cumis* counsel are to be resolved by final and binding arbitration.  (§ 2860, subd. (c).)  In contrast, the 2006 enforcement order provided that any dispute over allegedly excessive fees would be addressed in a court action.  Because the 2006 enforcement order is final and not subject to our review, and because Squire Sanders has raised no issue about the effect of section 2860's arbitration provision on the current litigation, we do not decide whether, in general, a dispute over allegedly excessive fees is more appropriately decided through a court action or an arbitration.

Finally, because the 2006 enforcement order expressly stated that resolution of any fee dispute would take place *after* the underlying litigation concluded, we do not decide *when* such fee disputes generally ought to be decided relative to the underlying litigation.

9

## II. DISCUSSION[8]

### A. *Restitution and the Duty to Defend*

When an insured under a standard CGL policy is sued by a third party, the insurer's contractual duty to defend the insured extends to all claims that are even potentially subject to the policy's indemnity coverage. (E.g., *Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 295-296; *Gray v. Zurich Ins. Co.* (1966) 65 Cal.2d 263, 276-277.) Moreover, when the third party suit includes some claims that are potentially covered, and some that are clearly outside the policy's coverage, the law nonetheless implies the insurer's duty to defend the entire action. (*Buss*, *supra*, 16 Cal.4th at p. 48.) And unless the insured agrees otherwise, in a case where — because of the insurer's reservation of rights based on possible noncoverage under the policy — the interests of the insurer and the insured diverge, the insurer must pay reasonable costs for retaining independent counsel by the insured. (*Cumis*, *supra*, 162 Cal.App.3d at p. 375; see § 2860, subds. (a), (b).)

This was such a case. Hartford reserved its right to dispute coverage for some or all of the defendants or claims in the Marin County, Nevada, and Virginia actions. Accordingly, Squire Sanders acted as the insureds' independent counsel in those suits. It did so pursuant to a court order specifying that Hartford must promptly pay Squire Sanders's bills as and when submitted, but that the firm's

---

[8] Amicus curiae briefs generally supporting Hartford's right to recover excessive billings directly from Squire Sanders in this proceeding have been filed by (1) Complex Insurance Claims Litigation Association and American Insurance Association; and (2) J.R. Marketing, Jane Ratto, and Robert Ratto. Amicus curiae briefs generally opposing Hartford's right to recover excessive billings directly from Squire Sanders in this proceeding have been filed by (1) Centex Homes, a Nevada partnership; (2) Attorney Steven W. Murray; (3) California Building Industry Association; (4) California Insureds Counsel; and (5) Montrose Chemical Corporation.

charges must be "reasonable and necessary," and that, after conclusion of the underlying litigation, Hartford could seek reimbursement of amounts it deemed excessive by this standard. The order did not specify from whom Hartford might obtain any such reimbursement.

Hartford now seeks reimbursement from Squire Sanders based on equitable principles of restitution and unjust enrichment. By charging Hartford for fees and expenses that were unreasonable and unnecessary for the insureds' defense, Hartford asserts, Squire Sanders unjustly enriched itself at Hartford's expense and thus owes Hartford restitution for the overbilled amounts.

An individual who has been unjustly enriched at the expense of another may be required to make restitution. (See *Ghirardo v. Antonioli* (1996) 14 Cal.4th 39, 51; see Rest.3d Restitution and Unjust Enrichment, § 1; 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 1013, p. 1102.) Where the doctrine applies, the law implies a restitutionary obligation, even if no contract between the parties itself expresses or implies such a duty. (See *Buss*, *supra*, 16 Cal.4th at p. 51.) Though this restitutionary obligation is often described as quasi-contractual, a privity of relationship between the parties is not necessarily required. (*Ibid.*; see *CTC Real Estate Services v. Lepe* (2006) 140 Cal.App.4th 856, 860-861.)

Restitution is not mandated merely because one person has realized a gain at another's expense. Rather, the obligation arises when the enrichment obtained lacks any adequate legal basis and thus "cannot conscientiously be retained." (Rest.3d Restitution and Unjust Enrichment, *supra*, § 1, com. b, p. 6.)

We addressed whether such an obligation arises for the insured to pay restitution in *Buss*. When the issuer of a CGL policy has met its obligation to completely defend a "mixed" action against its insured, we held that the insurer is entitled to restitution from the insured for those fees and costs that were solely attributable to defending claims that clearly were not covered by the policy. We

11

explained that the insurer never bargained to bear the costs of defending those claims that were manifestly outside the policy's coverage, and that the insured never paid premiums, or reasonably expected, to receive a defense of clearly noncovered claims. Under these circumstances, we concluded, it would be unjust for the insured to retain the benefit of the insurer paying for defense costs that are beyond the scope of the insurance contract. (*Buss*, *supra*, 16 Cal.4th at p. 51.)

As we concluded in *Buss*, if an insurer were required to absorb the costs of defending claims it clearly never agreed to defend, it is the *insured* who would gain a direct and unjust enrichment at the insurer's expense. But in *Buss*, we did not confront the question presented here — i.e., who is "unjustly" enriched if independent counsel representing the insured, but compensated by the insurer, are allowed to retain payments that were unreasonable and unnecessary for the insureds' defense against any claim. In the present situation, Hartford alleges that it is *counsel* who are the unjust beneficiaries of the insurer's overpayments. Thus, the question in this instance is premised on the assumption that counsel's fees were excessive and unnecessary and were not incurred for the benefit of the insured. In such a case, it is *counsel* who should owe restitution of the excess payments received. As applied here, accepting for the sake of argument that Squire Sanders's bills *were* objectively unreasonable and unnecessary to the insured's defense in the underlying litigation *and* that they were not incurred for the benefit of the insured, principles of restitution and unjust enrichment dictate that Squire Sanders should be directly responsible for reimbursing Hartford for counsel's excessive legal bills.

We emphasize that our conclusion hinges on the particular facts and procedural history of this litigation. As noted, the trial court's September 2006 enforcement order foreclosed Hartford from "invok[ing] the rate provisions of [s]ection 2860," but nevertheless admonished that counsel's bills must be

12

"reasonable and necessary," and, citing cases that allow reimbursement actions based on restitution principles, expressly provided that Hartford could challenge Squire Sanders's bills in a subsequent reimbursement action. This enforcement order was upheld on appeal and is now final. We thus assume its propriety for purposes of the question presented here. Our task is to determine only whether, taking as given that Hartford is entitled to challenge the reasonableness and necessity of counsel's fees in a reimbursement action, Hartford may seek reimbursement directly from Squire Sanders. We conclude that it may, but express no view as to what rights an insurer that breaches its defense obligations might have to seek reimbursement directly from *Cumis* counsel in situations other than the rather unusual one before us in this case.

B. *Objections*

Squire Sanders and its amici curiae raise numerous objections to the proposition that a direct action by the insurer for unjust enrichment can lie against *Cumis* counsel. None of these arguments compels the conclusion that such a claim is absolutely foreclosed.

1. *Objections based on principles of contract law*

First, Squire Sanders invokes the principle that one need not make quasi-contractual restitution for a benefit "incidentally" conferred by another while the other was performing a pre-existing duty or protecting his own interests. (E.g., *California Medical Assn. v. Aetna U.S. Healthcare of California, Inc.* (2001) 94 Cal.App.4th 151, 174 [health care service plan provider was not "unjustly" enriched when physicians, who had service contracts with "middlemen" and not with plan provider itself, furnished medical services at discounted rates to plan provider's enrollees, thus incidentally relieving provider of duty to pay for such services from noncontract physicians at undiscounted rates]; *Major-Blakeney Corp. v. Jenkins* (1953) 121 Cal.App.2d 325, 340-341 [absent agreement for

13

compensation, defendant landowner was not liable in restitution to developer of adjacent property insofar as developer's improvements to neighborhood streets and utilities resulted in "incidental" enhancement of value of defendant's property]; see 1 Witkin, Summary of Cal. Law, *supra*, Contracts, § 1020, p. 1109.) Here, Squire Sanders posits, Hartford contracted with its insureds to pay the cost of defending potentially covered third party claims against them, and Squire Sanders is merely the "incidental" beneficiary of Hartford's performance of this obligation.

We are not persuaded that the incidental benefits principle applies to the facts Hartford has alleged. The logic underlying this principle is straightforward: equity does not create a duty to pay for a benefit one neither sought nor had the opportunity to decline, and over which one had no control. (See Rest.3d Restitution and Unjust Enrichment, *supra*, § 30, com. b, pp. 465-466.) When a person acts simply as she would have done in any event, out of duty or self-interest, she cannot equitably claim compensation from anyone who merely happens to benefit as a result. (*Ibid.*)

Neither duty nor self-interest of the kind implicated in the incidental benefits principle accurately explains Hartford's payments to Squire Sanders. Hartford's obligation to pay for independent *Cumis* counsel was not unlimited. Pursuant to the 2006 enforcement order — as well as under the ethical rules that govern attorney conduct generally (see Rules Prof. Conduct, rule 4-200(A)) — its obligation to finance its insureds' defense in the Marin County, Nevada, and Virginia actions did not ultimately extend beyond the duty to pay the reasonable costs of the defense. Nor did Hartford voluntarily pay the alleged "unreasonable and unnecessary" overcharges submitted by Squire Sanders out of some self-interest extraneous to the benefit conferred on those counsel. Moreover, any such overpayments were not merely an "incidental" benefit to Squire Sanders,

14

fortuitously received by the firm and beyond its power to refuse. On the contrary, Squire Sanders, under the terms of a court order it obtained (and indeed, drafted), submitted bills to Hartford and obtained payment *subject to the express provision that counsel's bills must be reasonable, and that Hartford could later obtain reimbursement of excessive charges*. Under these circumstances, there is no basis for the conclusion that Squire Sanders merely received an incidental benefit it has no equitable obligation to repay.

Squire Sanders next suggests that relief for unjust enrichment is unavailable here because Hartford's claim is already addressed by an on-point, express contract between Hartford and its insureds. (See, e.g., *Hedging Concepts, Inc. v. First Alliance Mortgage Co.* (1996) 41 Cal.App.4th 1410, 1419; *Lance Camper Manufacturing Corp. v. Republic Indemnity Co.* (1996) 44 Cal.App.4th 194, 203.) We disagree. Hartford did not accept a bargain binding it to absorb whatever defense fees and expenses the insureds' independent counsel might choose to bill, no matter how excessive. As such, Hartford's claim against Squire Sanders for reimbursement of alleged overcharges does not contravene or alter any term of the contracts between Hartford and its insureds.

2. *Objections based on public policy and procedure*

Like the Court of Appeal, Squire Sanders and its amici curiae invoke the premise that restitution on a theory of unjust enrichment is not available when it would frustrate public policy. (E.g., *Peterson v. Cellco Partnership* (2008) 164 Cal.App.4th 1583, 1595; *California Emergency Physicians Medical Group v. PacifiCare of California* (2003) 111 Cal.App.4th 1127, 1136.) They urge, on various grounds, that to allow a "breaching insurer" such as Hartford to assert a direct right of action against its insureds' independent counsel would contravene the purposes of the *Cumis* rule and section 2860. They further assert that such a direct claim would interfere unduly with the insureds' attorney-client privilege and

15

with their absolute right to dictate and control the defense presented by independent counsel. We are unpersuaded that public policy precludes a direct action against Squire Sanders in this case.

Squire Sanders points to the general principle that when an insured is entitled to *Cumis* counsel, that counsel must be " ' "complete[ly] independen[t]." ' " (*Musser v. Provencher* (2002) 28 Cal.4th 274, 283 (*Musser*).) Squire Sanders asserts that *Cumis* counsel are answerable to " ' "solely the insured" ' " (*ibid.*) and have no attorney-client relationship with the insurer (*Assurance Co. of America v. Haven* (1995) 32 Cal.App.4th 78, 87-88, 90). Squire Sanders further avers that where, as here, the insurer wrongfully refused to defend the insured or to afford *Cumis* counsel, the insured may proceed as he or she deems appropriate, and the insurer forfeits all right to control the insured's defense, including the right to determine litigation strategy. (See, e.g., *Stalberg v. Western Title Ins. Co.* (1991) 230 Cal.App.3d 1223, 1233; cf. *James 3 Corp. v. Truck Ins. Exch.* (2001) 91 Cal.App.4th 1093, 1103, fn. 3 [holding, in inadequate defense suit by insured against insurer, that insurer's right to control non-*Cumis* defense "necessarily encompasses the right to determine what measures are cost effective"].) Squire Sanders insists that *Cumis* counsel's independence, zeal, and undivided loyalty to the insureds would be unduly compromised if, while conducting their clients' defense, counsel faced the chilling prospect of the insurer's lawsuit challenging, in hindsight, the reasonableness of counsel's efforts.

This argument is not convincing. Although *Cumis* counsel must indeed retain the necessary independence to make reasonable choices when representing their clients, such independence is not inconsistent with an obligation of counsel to justify their fees. In numerous settings in our legal system, the attorneys representing their clients know they will later have to justify their fees to a third party — including cases brought under fee-shifting statutes, class action

16

settlements, probate, and bankruptcy.  (*Chavez v. City of Los Angeles* (2010) 47 Cal.4th 970, 975-976 (*Chavez*); *Concepcion v. Amscan Holdings, Inc.* (2014) 223 Cal.App.4th 1309, 1314-1315 (*Concepcion*); *Estate of Trynin* (1989) 49 Cal.3d 868, 873; 11 U.S.C. § 330, subd. (a).)  Squire Sanders offers no convincing explanation for why attorney independence is possible in these settings, but not here.

What is more, the very statute codifying the *Cumis* doctrine already contemplates that counsel will be called upon to justify their fees.  Section 2860 specifically addresses the possibility of disputes about *Cumis* counsel's fees and provides for resolution of those disputes.  By its terms, the statute limits neither the potential "parties to the dispute" (§ 2860, subd. (c)) nor the billing issues that may be raised.  Because counsel are billing the insurer, and the insurer is sending its checks to counsel, such a dispute may well arise directly between the insurer and counsel.  (See Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2013) ¶ 7:809, p. 7B-106.11 [" 'Parties to the dispute' presumably includes the *Cumis* counsel, in addition to the insurer and insured"].)  Thus, under the *Cumis* statutory scheme itself, counsel face the prospect that insurers may question and resist their bills, and insurers are not precluded from doing so in a proceeding directly against counsel.

Squire Sanders counters by suggesting that fee disputes under section 2860 "usually" stand in stark contrast to the circumstances of this case.  Those disputes, Squire Sanders claims, tend to involve *insureds'* attempts to secure payment by their insurers of *Cumis* counsel's bills.  And disputes are limited to the hourly fee rate cap set forth in the statute.  But nothing in the statute itself limits the parties or the issues in a section 2860 fee dispute in this manner.  Indeed, cases involving arbitration under section 2860 suggest both that *Cumis* counsel are sometimes a party to the arbitration and that the issues to be arbitrated sometimes include

whether *Cumis* counsel's fees are reasonable and necessary. (Cf., e.g., *Janopaul + Block Companies, LLC v. Superior Court* (2011) 200 Cal.App.4th 1239, 1244 [upholding, on unrelated grounds, denial of insurer's motion to compel insured and *Cumis* counsel to arbitrate insurer's claims that insurer was entitled to reimbursement of fees above those "reasonable and necessary" for insured's defense]; *Long v. Century Indemnity Co.* (2008) 163 Cal.App.4th 1460, 1465-1466 [finding arbitrable a fee dispute between *Cumis* counsel and insurer regarding counsel's right to receive a higher fee than that provided for in § 2860, subd. (c)].)

Squire Sanders also suggests that the process in place when *Cumis* counsel's representation is governed by section 2860 is preferable to a rule allowing the insurer to obtain reimbursement of unreasonable fees under principles of restitution. The "more collaborative" system established by section 2860, Squire Sanders contends, mitigates the risk that an insurer's questioning of counsel's fees will undermine counsel's independence. But it is far from self-evident that section 2860 codifies a "more collaborative process" among the insurer, insured, and counsel. By its terms, section 2860 comes into play only when the interests of the insurer and the insured are so at odds that "the outcome of [a disputed] coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim." (§ 2860, subd. (b).) Section 2860 is not triggered simply because an insurer defends under a reservation of rights, the underlying litigation alleges facts under which the insurer would deny coverage, or the litigation includes claims for punitive damages or damages in excess of policy limits. (*Ibid.*; see also *Gafcon, Inc. v. Ponsor & Associates* (2002) 98 Cal.App.4th 1388, 1421 ["[C]ourts of appeal, including ours, repeatedly recognize a conflict of interest does not arise every time the insurer proposes to provide a defense under a reservation of rights. There must also be evidence that 'the outcome of [the] coverage issue can be controlled by counsel first retained by the insurer for the

18

defense of the [underlying] claim' "].)  Given that section 2860 comes into play only when there exists a real and significant disjuncture between the interests of an insurer and its insured, we fail to see how the degree of tension in the relationship between Hartford and the insureds in this case — even if purportedly higher than in cases where section 2860 is triggered — meaningfully heightens any threat to *Cumis* counsel's independence.

Section 2860 is preferable as well, Squire Sanders claims, because it provides for contemporaneous resolution of fee disputes as they arise during the course of the underlying lawsuit against the insureds.  Squire Sanders asserts that contemporaneous proceedings intrude less on counsel's independence than after-the-fact litigation, because a contemporaneous proceeding provides "real-time guidance to counsel about which activities [they] may undertake," without raising the concern that counsel will "hav[e] the rug pulled out from under [them] years after the fact by the insurer."

These concerns about timing are speculative at best.  For one thing, although nothing in the language of section 2860 forecloses the contemporaneous resolution of fee disputes, nothing requires it.  In any event, there is no obvious reason why, if *Cumis* counsel can be required to defend their bills while simultaneously representing their clients, counsel should not equally be able to defend their bills after the third party litigation has concluded.  Indeed, *Cumis* counsel might even prefer to defend their bills only after the third party litigation has ended insofar as this would allow counsel to devote their full attention to the insureds' defense while the third party suit is in progress, rather than becoming embroiled in side arguments with the insurer over fees.

But we need express no final views on the relative merits of contemporaneous versus after-the-fact resolution of fee disputes.  As noted previously, the 2006 enforcement order, drafted by Squire Sanders, upheld on

19

appeal, and now final, specifically reserved Hartford's right to seek reimbursement of unreasonable legal charges *after* the third party litigation had concluded. This final order is dispositive, for purposes of the instant case, of the timing of Hartford's claim for reimbursement.[9]

Squire Sanders next argues that, because of the exclusive attorney-client relationship between *Cumis* counsel and the insureds, the insureds alone have the authority and responsibility to monitor and control counsel's expenditures on their behalf. Thus, if the insureds fail to prevent *Cumis* counsel from submitting unreasonable and excessive bills to the insurer, Squire Sanders reasons that the insureds should bear the consequences of this failure — subject to a right of cross-indemnity against counsel.

This argument all but ignores the realities of cases like the one before us. Squire Sanders acknowledges that the insureds in this case were not sophisticated, frequent litigators accustomed to monitoring their counsel's day-to-day litigation decisions. Having contracted with Hartford, and having paid premiums, to be spared the fees and expenses of their defense, there is no indication that the insureds had reasonable cause to expect that they would nonetheless face exposure

---

[9] Squire Sanders makes a related argument that allowing Hartford's suit will create a perverse incentive for insurers to breach their duties to defend their insureds. Squire Sanders reasons that, having forfeited, as a "breaching insurer," the protections of section 2860, Hartford would now be placed in a better position than under the statute by a rule permitting it to evaluate the worth of counsel's efforts in hindsight. Hartford responds that it would not be tempted to deliberately breach its obligations, expose itself to claims of tortious bad faith, and forfeit the protections of section 2860 merely to gain an opportunity to contest counsel's bills in an after-the-fact reimbursement action. As explained above (see *ante* p. 13 & fn. 7), we are not here deciding when, and in what forum, a breaching insurer may challenge the legal bills presented by *Cumis* counsel. The sole issue before us is whether, *assuming* the insurer may seek reimbursement of allegedly excessive, unreasonable, and unnecessary charges from a court after the underlying litigation has concluded, the insurer may seek such reimbursement *directly from counsel*.

20

if Squire Sanders submitted unreasonable and excessive bills to Hartford. Nor is there any indication the insureds expected that they would have to mount and finance a separate litigation against their own counsel in order to have any hope of recovering the funds they were ordered to pay to the insurer as a result of counsel's unreasonable billing. Such a circuitous, complex, and expensive procedure serves neither fairness nor any other policy interest. We see no persuasive ground to hold that any direct liability to Hartford for bill padding by Squire Sanders must fall solely on the insureds.

Also unavailing is Squire Sanders's contention that its due process rights would be affected by allowing Hartford to recover directly from *Cumis* counsel. Such rights would be violated, Squire Sanders asserts, if the insureds' refusal to waive attorney-client privilege prevents counsel from effectively defending against an insurer's claims for reimbursement. This concern appears to be hypothetical, as Squire Sanders does not contend that the defense of its bills in *this* litigation hinges on any issue that implicates attorney-client privilege.[10] In any case, an objective assessment of the litigation as a whole to determine whether counsel's bills appear fundamentally reasonable is unlikely to involve an examination of individual attorney-client communications or the minute details of every litigation decision. If privileged information on these subjects is included in counsel's billing records, it can be redacted for purposes of assessing whether counsel's bills are reasonable. (See, e.g., *Concepcion*, *supra*, 223 Cal.App.4th at p. 1327 [party's claim of attorney-client privilege with respect to billing records

---

[10] On a related front, Squire Sanders does not argue, and the record does not suggest, that any of the allegedly excessive fees it incurred in defending the Marin County, Nevada, and Virginia actions were incurred on the insureds' explicit direction or undertaken in order to benefit the insured in some way unrelated to avoiding or minimizing liability in the underlying litigation.

21

did not justify failing to provide records to defendant in dispute over attorney's fees; bills could simply be redacted to delete confidential information]; *Banning v. Newdow* (2004) 119 Cal.App.4th 438, 454 [rejecting father's claim in child custody dispute that bills submitted by mother's counsel, redacted to protect attorney-client and work product privileges, "left him unable to challenge the reasonableness of the fees"].) Trial courts are accustomed to dealing with claims of attorney-client privilege in a manner that balances the competing interests of the parties, and can thus presumably address any privilege issues that arise on a case-by-case basis.

Finally, Squire Sanders insists that allowing an insurer to seek direct reimbursement from *Cumis* counsel would contravene California's established prohibition on the assignment of legal malpractice claims. (See generally, e.g., *Musser*, *supra*, 28 Cal.4th at p. 287.) This prohibition " 'protect[s] the integrity of the uniquely personal and confidential attorney-client relationship.' " (*Ibid.*) It also guards against the unseemly and burdensome commercialization of claims arising from professional duties owed by an attorney exclusively to his or her client. (See *Fireman's Fund Ins. Co. v. McDonald, Hecht & Solberg* (1994) 30 Cal.App.4th 1373, 1379; *Kracht v. Perrin, Gartland & Doyle* (1990) 219 Cal.App.3d 1019, 1023-1024.)

As Hartford points out, however, this case is quite different. Hartford does not seek to stand in the insureds' shoes in order to assert a claim that counsel violated a duty to the insureds by performing deficiently on their behalf. Nor does Hartford seek commercial gain by trading in a claim that, by its nature, belongs uniquely and personally to the insureds. On the contrary, Hartford is attempting to recover *legal charges it paid*, under court order, to counsel for their services to the insureds — fees Hartford now contends were excessive for the work that was done.

22

And as Hartford asserts in response to the concerns Squire Sanders raises about a direct action against *Cumis* counsel, after-the-fact scrutiny of *Cumis* counsel's charges should indeed be quite limited. Hartford agrees that counsel must be "free to represent the insured as [they] see[ ] fit, subject only to generally applicable legal provisions and professional standards." (*Buss*, *supra*, 16 Cal.4th at p. 58.) Hence, Hartford argues, the proper test for any hindsight claim of excessive billing is the same as for a contemporaneous challenge — i.e., whether the charges were *objectively reasonable at the time they were incurred*, under the circumstances then known to counsel. (Cf., e.g., *Chavez*, *supra*, 47 Cal.4th at pp. 990-991 [in determining if fee award is unduly inflated, court may consider whether, viewing the scope of the litigation as a whole, the award exceeds "the time an attorney might reasonably [have been] expect[ed] to spend" thereon; *Aerojet-General Corp. v. Transport Indemnity Co.* (1997) 17 Cal.4th 38, 62-63 [insured's investigation costs are payable by insurer as part of insurer's duty to defend if, "assessed under an objective standard," the investigation would have been conducted, and the expenses incurred, by a "reasonable insured under the same circumstances" in an effort to avoid or minimize liability].) We agree that Hartford sets forth the appropriate standard for fee disputes of the kind at issue here. We add that the burden to prove that *Cumis* counsel's fees were in fact unreasonable and unnecessary falls entirely on the insurer.

When the insurer seeks to carry that burden in a case such as this one, however, the insurer may proceed directly against *Cumis* counsel in its reimbursement action. We emphasize that this conclusion is a limited one, and a particularly apposite one given the history of this litigation. The trial court's 2006 enforcement order plainly permits Hartford to pursue *someone* for reimbursement of allegedly excessive legal charges. The clarity and finality of this order removes from our consideration the question whether Hartford, as a "breaching" insurer

23

that was arguably caught shirking its defense duties, ought to be able to pursue *anyone* for alleged overpayments.  Similarly off the table is the question of whether the trial court ought to have cut Hartford off from section 2860's arbitration provisions, even as a sanction for its breach.  Thus, to the extent Squire Sanders or its amici curiae perceive unfairness in the conclusion that a breaching insurer cut off from the protections of section 2860 should nevertheless retain the right to recoup allegedly excessive legal charges in a later court proceeding, any such unfairness stems from the 2006 enforcement order and not from our holding here.  Taking the 2006 enforcement order as we find it, we conclude that equitable principles of restitution and unjust enrichment dictate that Hartford may seek reimbursement for the allegedly unreasonable and unnecessary defense fees directly from Squire Sanders.

Squire Sanders's own conduct in the course of this litigation further supports our conclusion that it is not unjust to allow Hartford to pursue its reimbursement action directly against Squire Sanders.  Squire Sanders drafted the very order that expressly preserved Hartford's right to pursue reimbursement for excessive fees and grounded that reimbursement right in principles of restitution and unjust enrichment.  Our holding that Hartford may pursue its claim for reimbursement against Squire Sanders stems directly from — and is wholly consistent with — that order.  Squire Sanders now attempts to avoid the effects of this order by encouraging us to foist all responsibility for reimbursement onto its erstwhile clients, but we see no reason to accept that invitation.  Under the circumstances, allowing Hartford to pursue a narrow claim for reimbursement against Squire Sanders under the terms of the 2006 enforcement order neither rewards an undeserving insurer nor penalizes unsuspecting *Cumis* counsel.

24

## III. Disposition

The judgment of the Court of Appeal is reversed insofar as it upheld the dismissal of Squire Sanders from Hartford's cross-suit, and is otherwise affirmed.

**CUÉLLAR, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**WERDEGAR, J.**
**CHIN, J.**
**CORRIGAN, J.**
**KRUGER, J.**

**CONCURRING OPINION BY LIU, J.**

"From the very nature of equity, a wide play is left to the conscience of the chancellor in formulating his decrees, that justice may be effectually carried out." (*Bechtel v. Wier* (1907) 152 Cal. 443, 446.)  Carrying out justice in this fee dispute is perhaps easier said than done, since no party appears blameless here.  Today's opinion foregrounds Squire Sanders's behavior, casting the law firm as the undeserving recipient of millions of dollars in unreasonable legal fees and thus an appropriate target for Hartford's unjust enrichment action.  But there are other parts to the story.  Hartford spent years attempting to avoid its duty to defend, and as Squire Sanders was racking up the disputed fees, J.R. Marketing was not exactly a helpless bystander.

Hartford issued J.R. Marketing a general commercial liability policy in the summer of 2005.  Pursuant to the policy, Hartford promised to defend and indemnify J.R. Marketing against claims for various business-related damages.  In September 2005, J.R. Marketing found itself a defendant in a third party lawsuit in Marin County.  Hartford refused to defend J.R. Marketing on the ground that the claims at issue were not covered by the policy.

Thus began what the Court of Appeal later described as "Hartford's ongoing failure to immediately and fully defend."  In February 2006, J.R. Marketing — now represented by Squire Sanders — brought a coverage action against Hartford.  In March 2006, Hartford agreed to defend J.R. Marketing

1

subject to a reservation of rights but refused to pay any defense costs incurred prior to January 19, 2006. In addition, Hartford insisted on using its usual panel counsel rather than providing independent *Cumis* counsel. (See *San Diego Navy Federal Credit Union v. Cumis Ins. Society, Inc.* (1984) 162 Cal.App.3d 358 (*Cumis*).) Unimpressed with this offer, J.R. Marketing moved for summary adjudication of the coverage action. The trial court agreed, concluding in July 2006 that "Hartford owed a duty to defend that arose on September 26, 2005" — the date J.R. Marketing tendered defense to Hartford — and that Hartford's reservation of rights "triggered the need for independent counsel."

Hartford then failed to comply with the trial court's July 2006 summary adjudication order, prompting J.R. Marketing to move for enforcement. In response, Hartford moved to disqualify Squire Sanders, arguing that because the law firm was simultaneously serving as *Cumis* counsel to another Hartford policyholder in a separate third party lawsuit, it could not represent J.R. Marketing in its coverage action against Hartford.

On September 27, 2006, the trial court denied Hartford's disqualification motion, explaining that Squire Sanders's role as *Cumis* counsel in the separate third party lawsuit did not give rise to an attorney-client relationship between Squire Sanders and Hartford. On the same day, the trial court issued an enforcement order finding that Hartford "has breached and continues to breach its defense obligations by (1) failing to pay all reasonable and necessary defense costs incurred by the insured and by (2) failing to provide *Cumis* counsel." Hartford "had paid some defense bills but not others, and had unilaterally deducted certain portions of the costs contained in still others." The trial court ordered Hartford to pay Squire Sanders's outstanding invoices within 15 days and pay future invoices within 30 days.

Although the trial court recognized that Squire Sanders's fees had to be reasonable, it also explained that by breaching its duty to defend, Hartford had forfeited the protections afforded to insurers in Civil Code section 2860 (hereafter section 2860), including the statutory limitation on *Cumis* counsel's rates. As the trial court explained, affording Harford the benefit of section 2860 "would work an injustice, since Hartford has already forced its policyholders to transfer the defense of the [Marin County] matter from [Squire Sanders] to Hartford's panel counsel, only to have it come back again."

Hartford appealed the trial court's summary adjudication order, enforcement order, and denial of its motion to disqualify Squire Sanders. The Court of Appeal affirmed in a pair of unpublished opinions filed in October and November 2007. Only then — more than two years after J.R. Marketing tendered defense of the Marin County action to Hartford — did Hartford finally accept that it had to pay Squire Sanders for its work on the matter.

Meanwhile, in defending the Marin County action, Squire Sanders incurred the legal fees now at issue in this case. J.R. Marketing lacked extensive litigation experience, but it nonetheless played a role in its own defense. As the Court of Appeal observed, J.R. Marketing's officers "hired Squire as independent counsel to represent their interests in the defense, negotiated the relevant fee arrangement with Squire, and oversaw all matters of defense strategy including, presumably, deciding with Squire the cost/benefit of various litigation pursuits." The Court of Appeal further noted that according to Hartford's own complaint, J.R. Marketing's officers and other individual defendants in the Marin County action "authorized and ratified each act of legal service rendered by Squire on their behalf as counsel in those actions."

This narrative shows that the relationship among Hartford, J.R. Marketing, and Squire Sanders was fraught in a way that fundamentally differs from the usual

3

*Cumis* scenario in which an insurer agrees to defend its insured subject to a reservation of rights. By breaching its duty to defend, Hartford forfeited its right under section 2860 to retain oversight of Squire Sanders's defense of the Marin County action. Further, J.R. Marketing allegedly "authorized and ratified" Squire Sanders's work. Given this background, it is not surprising that Squire Sanders's fees led to a further dispute with Hartford, but it is not clear who, as between J.R. Marketing and Squire Sanders, should be directly accountable to Hartford for any alleged overbilling.

Today's opinion grounds its analysis in the September 2006 enforcement order, which said that despite Hartford's recalcitrance, Squire Sanders's bills "still [had to] be reasonable and necessary." The order further provided that "[t]o the extent Hartford seeks to challenge fees and costs as unreasonable or unnecessary, it may do so by way of reimbursement after resolution of the [Marin County action]." The court correctly reasons that because this order establishes Hartford's right to seek reimbursement from *someone*, and because Hartford alleges that the fees at issue were not incurred for the benefit of J.R. Marketing, it follows that Hartford should be able to recover directly from Squire Sanders, "who are the unjust beneficiaries of the insurer's overpayments." (Maj. opn., *ante*, at p. 12.)

Crucially, though, the court leaves open the possibility that some portion of Squire Sanders's allegedly unreasonable fees *were* incurred for the benefit of J.R. Marketing. To the extent this is true of any of the fees Hartford seeks to recover, such fees necessarily fall outside the scope of today's holding. For that holding is premised on the dual assumptions "that Squire Sanders's bills *were* objectively unreasonable and unnecessary to the insured's defense in the underlying litigation *and* that they were not incurred for the benefit of the insured." (Maj. opn., *ante*, at p. 12.) On remand, it will be Hartford's burden to show not only that the fees it seeks to recover from Squire Sanders were not "*objectively reasonable at the time*

4

*they were incurred*, under the circumstances then known to counsel" (*id.* at p. 23), but also that the fees were not incurred for J.R. Marketing's benefit. If Squire Sanders's fees were unreasonable but incurred primarily for J.R. Marketing's benefit, Hartford's reimbursement action should lie against J.R. Marketing, not Squire Sanders. (See *Buss v. Superior Court* (1997) 16 Cal.4th 35, 51 [when *Cumis* counsel's representation includes defense of claims not even potentially covered by the policy, the insured "benefits from 'unjust enrichment' " and may be sued by the insurer].)

Today's narrow decision does not address how the trial court should determine which entity benefited from the allegedly unreasonable fees. That question will have to be decided on remand. In the circumstances here, I believe Hartford should have to overcome a presumption that any fees billed by Squire Sanders — even fees later found to be unreasonable — were incurred primarily for the benefit of J.R. Marketing. Such an approach would accord with the purposes behind the *Cumis* scheme as well as our usual understanding of the attorney-client relationship.

We have long recognized that " '[t]he *Cumis* doctrine requires "complete independence of counsel" [citation], who represents "solely the insured." ' " (*Musser v. Provencher* (2002) 28 Cal.4th 274, 283.) In other words, "*Cumis* counsel represents the insured independently of the insurer," and its attorney-client relationship exists with the insured, not the insurer. (*Assurance Co. of America v. Haven* (1995) 32 Cal.App.4th 78, 90, italics omitted.) Thus, when it comes to defending the third party action, the insured retains ultimate decision-making authority. (See *id.* at p. 87 ["An important corollary of the *Cumis* doctrine is that if the insured is entitled to *Cumis* counsel, the insured is entitled to control the defense of the case."]; *Cumis*, *supra,* 162 Cal.App.3d at p. 369.)

5

More generally, we understand the client's right of control in terms of agency. The attorney acts as the agent of his or her client, and "the client as principal is bound by the attorney's acts within the scope of the attorney's actual (express or implied) or apparent or ostensible authority, or by unauthorized acts ratified by the client." (1 Witkin, Cal. Procedure (5th ed. 2008) Attorneys, § 235, p. 309; see *Link v. Wabash Railroad Co.* (1962) 370 U.S. 626, 633–634.) This is so even though some insureds are "not sophisticated, frequent litigators accustomed to monitoring their counsel's day-to-day litigation decisions." (Maj. opn., *ante*, at p. 20.) The general rule, in both civil and criminal matters, is that an attorney is the client's agent and the client is responsible for the attorney's actions, regardless of the client's sophistication. I see no reason to make an exception here. (Cf. *Link*, at p. 634, fn. 10 ["[I]f an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice."].)

In concluding that Hartford may seek reimbursement directly from Squire Sanders, the court sees no threat to *Cumis* counsel's independence that differs appreciably from what section 2860 contemplates. "Given that section 2860 comes into play only when there exists a real and significant disjuncture between the interests of an insurer and its insured," the court says, "we fail to see how the degree of tension in the relationship between Hartford and the insureds in this case — even if purportedly higher than in cases where section 2860 is triggered — meaningfully heightens any threat to *Cumis* counsel's independence." (Maj. opn., *ante*, at p. 19; see *id.* at p. 18 [rejecting Squire Sanders's contention that section 2860 envisions a " 'more collaborative' " relationship among insurer, insured, and *Cumis* counsel].) But the court understates the degree to which this case differs from the typical *Cumis* scenario.

In the ordinary situation that requires appointment of *Cumis* counsel, the insurer acknowledges that some or all of the third party claims are at least potentially covered under the policy and on that basis agrees to defend its insured. If the "insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict of interest may exist" that gives rise to the need for *Cumis* counsel.  (§ 2860, subd. (b).)  But the existence of that conflict does not mean the insurer and insured are entirely at odds.  Their interests remain aligned as to third party claims unaffected by the coverage dispute.  And even as to the claims implicating that dispute, "[b]oth the insured and the insurer, of course, share a common interest in defeating the claims."  (*Long v. Century Indemnity Co.* (2008) 163 Cal.App.4th 1460, 1471.)  The conflict exists only to the extent that "if liability is found, their interests diverge in establishing the basis for that liability." (*Ibid.*)

Having accepted that this conflict of interest requires appointment of *Cumis* counsel, the insurer then plays an integral role in establishing and managing the tripartite relationship.  At the appointment stage, it may "exercise its right to require that the counsel selected by the insured possess certain minimum qualifications."  (§ 2860, subd. (c).)  Once *Cumis* counsel begins representing the insured, "it shall be the duty of [*Cumis*] counsel and the insured to disclose to the insurer all information concerning the [third party] action except privileged materials relevant to coverage disputes, and timely to inform and consult with the insurer on all matters relating to the action."  (§ 2860, subd. (d).)  In addition, "both the counsel provided by the insurer and independent counsel selected by the insured shall be allowed to participate in all aspects of the litigation," and "[c]ounsel shall cooperate fully in the exchange of information that is consistent with each counsel's ethical and legal obligation to the insured."  (§ 2860,

7

subd. (f).) This statutory scheme, like its counterparts in other jurisdictions, contemplates that "an insurer can reasonably insist that independent counsel fully inform it of factual and legal developments related to the defense, consult with it on defense strategy and tactics, and consult with it before incurring major expenses in the course of the defense." (Richmond, *Independent Counsel in Insurance* (2011) 48 San Diego L.Rev. 857, 890, fns. omitted.) Indeed, "[t]he insurer's advice, insight, or suggestions may prove valuable to the insured." (*Ibid.*)

These statutory mechanisms promote transparency and collaboration among the insurer, insured, and *Cumis* counsel. Because the insurer is in the dark only as to matters pertaining to the coverage dispute, section 2860 narrows the fee issues about which these entities might disagree. The avenues of participation and information sharing built into the usual *Cumis* scenario reduce the risk that a fee dispute will serve as a mechanism by which the insurer seeks to influence the judgments of *Cumis* counsel.

Here, unlike the usual *Cumis* scenario, Hartford breached its duty to defend J.R. Marketing. After the trial court found Hartford in breach, Hartford refused to provide J.R. Marketing with independent counsel retained at the insurer's expense. And after the trial court found that J.R. Marketing was entitled to independent counsel, Hartford did not timely pay Squire Sanders's invoices until the trial court issued its September 2006 enforcement order. By the terms of the enforcement order, Hartford lost its statutory protections, including the insurer's usual oversight role over matters outside the scope of the coverage dispute. (§ 2860, subds. (d), (f).) Once Hartford was shut out of Squire Sanders's defense of the Marin County action, it is little wonder that Hartford, which fought to prevent counsel's appointment in the first place, has alleged flaws in the way Squire Sanders conducted the defense. When an insurer breaches its duty to defend, seeks to

8

prevent appointment of *Cumis* counsel, refuses to timely pay counsel until ordered to do so, and forfeits its statutory right to participate in the defense, I think it is evident that the availability of a reimbursement action directly against counsel "meaningfully heightens [the] threat to *Cumis* counsel's independence" (maj. opn., *ante*, at p. 19) beyond what occurs in the usual *Cumis* scenario.

In recognition of *Cumis* counsel's independence and the well-established agency relationship between client and attorney, the trial court on remand should apply a presumption that Squire Sanders's fees were incurred primarily for the insured's benefit. Without such a presumption in this kind of case, where the insurer and insured are bitterly divided and the insurer has forfeited its statutory oversight authority, counsel will face a conflict between its duty of loyalty to the insured and its understandable desire to avoid liability in a subsequent reimbursement action by the insurer. An insurer seeking reimbursement from *Cumis* counsel for unreasonable fees should have to demonstrate that counsel misled the insured in the representation, acted without the insured's express or implied authorization, contravened the insured's instructions, or otherwise acted in a manner with little or no benefit to the insured.

It may be difficult to determine whether or how much the insured benefited simply by looking at the services provided. Assigning two associates to write the same research memo might be duplicative, but what if the work was meant to ensure that no stone goes unturned in researching a difficult area of the law? Taking seven depositions instead of three might result in significant fees, but if counsel seeks to probe all angles that might help its client, can it be said, without careful inquiry, that the fifth (or sixth or seventh) deposition yielded little or no benefit to the insured? Such practices may, upon inspection, turn out to be unjustifiable bill-padding by counsel. But absent evidence to the contrary, we should presume that the insured, as the client controlling *Cumis* counsel's defense

9

of the third party action, was the entity that primarily benefited from any fees incurred.

To be clear, Squire Sanders is probably not blameless in this matter. When its invoices are carefully scrutinized on remand, it may have to reimburse Hartford for some or all of the disputed fees. But in our effort to achieve an equitable result, we should give due consideration to the integrity of the attorney-client relationship. The history of this contentious case should cause us to be alert to basic norms of attorney loyalty and independence as well as client control and accountability.

**LIU, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Hartford Casualty Insurance Company v. J.R. Marketing, L.L.C.
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 216 Cal.App.4th 1444
**Rehearing Granted**

_____

**Opinion No.** S211645
**Date Filed:** August 10, 2015
_____

**Court:** Superior
**County:** San Francisco
**Judge:** Loretta M. Giorgi

_____

**Counsel:**

Horvitz & Levy, David M. Axelrad, Emily V. Cuatto, Andrea A. Ambrose; Mendes & Mount, Dean B. Herman, Catherine L. Rivard; Edwards Wildman Palmer, Ira G. Greenberg; Wiggin and Dana and Jonathan M. Freiman for Cross-complainant and Appellant.

Aguilera Law Group, A. Eric Aguilera, Raymond E. Brown and Lindsee Falcone for Complex Insurance Claims Litigation Association and American Insurance Association as Amici Curiae on behalf of Cross-complainant and Appellant.

Squire Sanders (US), Squire Patton Boggs (US), Mark C. Dosker, Ethan A. Miller, Barry D. Brown, Jr., Michelle M. Full, Pierre H. Bergeron; Gibson, Dunn & Crutcher, Theodore J. Boutrous, Jr., and Julian W. Poon for Cross-defendants and Respondents.

Newmeyer & Dillion, Thomas F. Newmeyer, Joseph A. Ferrentino and Rondi J. Walsh for California Building Industry Association as Amicus Curiae on behalf of Cross-defendants and Respondents.

Payne & Fears, J. Kelby Van Patten and Jeffery M. Hayes for Centex Homes as Amicus Curiae on behalf of Cross-defendants and Respondents.

Latham & Watkins, Brook B. Roberts and John M. Wilson for Montrose Chemical Corporation of California as Amicus Curiae on behalf of Cross-defendants and Respondents.

Diamond McCarthy, Christopher D. Sullivan, Kenneth A. Brunetti, Matthew S. Sepuya; California Appellate Law Group, Myron Moskovitz, William N. Hancock and Ben Feuer as Amici Curiae on behalf of Cross-defendants and Respondents.

Thomas & Elliott, Stephen L. Thomas, Jay J. Elliott; Benedon & Serlin, Gerald M. Serlin; Ford & Serviss, William H. Ford III; Irell & Manella, Marc S. Maister, Brian Bark; Dickstein Shapiro and Kirk A. Pasich for California Insureds Counsel as Amici Curiae.

Steven W. Murray as Amicus Curiae.

1

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Jonathan M. Freiman
Wiggin and Dana
One Century Tower
265 Church Street
New Haven, CT  06510-7013
(203) 498-4400

Theodore J. Boutrous, Jr.
Gibson, Dunn & Crutcher
333 South Grand Avenue
Los Angeles, CA  90071-3197
(213) 229-7000